WILLIAM H. PHILIPS et al., Executors, etc., Appellants, *v.*
WILLIAM MACKELLAR, Impleaded, etc., Respondent.

The fact that an agent, without the authority, consent or knowledge of his
principal, upon loaning the money of the latter, exacted a sum in excess
of lawful interest, does not make the loan usurious ; nor does the fact
of the receipt by the principal of the sum so paid, in the absence of
evidence of knowledge on his part that it was paid as a usurious con-
sideration for the loan, establish a ratification of the act of the agent.

To make out the defense of usury, it must be made to appear that the
lender had knowledge of the usurious agreement and assented to the
same.

*It seems,* however, in such case, the sum so paid should be allowed and
applied as a payment.

(Argued March 8, 1883 ; decided March 27, 1883.)

APPEAL from judgment of the General Term of the Su-
preme Court, in the first judicial department, entered upon an
order made May 23, 1881, which affirmed a judgment in favor
of defendant, entered upon a decision of the court on trial at
Special Term.

This action was brought to foreclose a mortgage given by
defendant William Mackellar and his wife to the plaintiff's
testator, on the 17th day of October, 1873, to secure the pay-
ment of $12,000, the amount of a loan made to Mackellar.

It appeared that the whole amount of the loan was paid to
Mackellar on the 18th day of October, 1873. The loan was made
under an arrangement effected between Abner C. Thomas, who
acted as the lender's attorney and agent in the transaction, and
Thomas Mackellar, son of said William Mackellar. The fur-
ther material facts are stated in the opinion.

*Amasa J. Parker* for appellent. In order that the de-
ceased plaintiff may successfully be implicated in a contract to
take usury, it must be shown that he either made the contract
or authorized it to be made in his behalf. (*Farmers' Loan & T.
Co.* v. *Clowes,* 3 N. Y. 470 ; *Condit* v. *Baldwin,* 21 id. 219 ;
*Bell* v. *Day,* 32 id. 165 ; *Algur* v. *Gardner,* 54 id. 360 ;

*Estevez* v. *Purdy*, 66 id. 446; *Guard. Mut. L. Ins. Co.* v. *Kashaw*, id. 544; *S. C.*, 3 Hun, 616; *Lee* v. *Chadsey*, 2 Keyes, 543; *S. C.*, 3 Abb. Ct. App. Dec. 43; *Van Wyck* v. *Watters*, 81 N. Y. 352; *Crane* v. *Hubbel*, 7 Paige, 413.) To constitute usury it is not sufficient to show payment. The vice, if it exists at all, is found in the original contract and in the meeting of the minds of the parties in the undertaking, on the one side to pay and on the other side to receive excessive and unlawful interest. (*L. & T. Co.* v. *Clowes*, 3 N. Y. 470; *Smith* v. *Bird*, 3 Day [Conn.], 268.) In the absence of proof of an agreement made by the defendant, William Mackellar, or in pursuance of his authority and on his behalf to pay usury, this defense cannot be sustained. (*Morton* v. *Thurber*, 85 N. Y. 550; *McArthur* v. *Schenck*, 31 Wis. 673; 11 Am. Rep. 643; *Guggenheimer* v. *Geiszler*, 81 N. Y. 293.) At the worst, the plaintiff should only be required to deduct from the mortgage debt the amount of the alleged bonus. (*Real Estate T. Co.* v. *Keech*, 69 N. Y. 248; *Abrahams* v. *Claussen*, 52 How. Pr. 241; *Langdon* v. *Gray*, id. 387.)

*A. J. Vanderpoel* for respondent. When the agent of the loaner has exacted a premium in the course of the negotiation of a loan, it is a question of fact whether the agent's demand for the additional sum, and the agreement of the borrower to pay the same were separate and divisible from the contract of loaning, or whether the loaning and the agreement for premium were a single and entire transaction. (*Condit* v. *Baldwin*, 21 N. Y. 219; *Bell* v. *Day*, 32 id. 165; *Algur* v. *Gardner*, 54 id. 360; *Estevez* v. *Purdy*, 66 id. 446; *Van Wyck* v. *Watters*, 81 id. 352; *Wyeth* v. *Braniff*, 84 id. 627, 632.)

MILLER, J. Upon the trial of this action the court found, in substance, that the bond and mortgage in controversy were made and executed under a corrupt and usurious agreement; that the defendant paid and the plaintiff took and received a greater rate of interest than seven per cent, namely, the sum of $1,200 over and above the lawful rate of interest for the

use and forbearance of the money loaned, and that this agreement was carried into effect by the parties. The testimony in reference to said alleged agreement was conflicting. It was proved by the defendant's son that a check of the defendant, embracing the $1,200, was made and delivered to the attorney of the plaintiff on the 20th of October, 1873, two days after the money loaned had been paid to the defendant, and that this $1,200 was paid for the loan of $12,000. The plaintiff's attorney on the next day made and delivered his check to the plaintiff for the same amount of the check he received from defendant's son. The plaintiff and his attorney both deny that this $1,200 was received as a usurious consideration for the money loaned. It appeared that the plaintiff held two mortgages, amounting to $10,000, against the defendant upon other real estate, and by an arrangement between him and the defendant these mortgages were taken up and another mortgage taken for the same amount, subsequent to the mortgage in controversy, upon the real estate covered by the same. This last mortgage being a subsequent lien upon the premises was not as safe a security as the one for which it was substituted, and the evidence of the plaintiff's attorney was to the effect that the $1,200 was given in consideration of this change and not as a usurious premium for the loan of $12,000.

The judge upon the trial found in favor of the defendant. It does not, however, necessarily follow that his conclusion, that the loan was usurious, must be upheld. If the loan was made by the attorney or agent of the plaintiff for a usurious consideration, without the authority, consent or knowledge of the plaintiff, and if the plaintiff, when he received the $1,200, supposed and believed that it related to the other transaction to which reference has been had, it is by no means clear that the loan in question was tainted with a usurious and unlawful consideration. In order to establish the defense set up it must be shown that the plaintiff had knowledge of the usury and that it was taken with his consent. There is no evidence in the case which establishes the fact that, prior to the making of the loan, the plaintiff consented to the taking

of the unlawful premium as a consideration for the same. He swears directly to the contrary, and there is no proof from which it can be claimed that the plaintiff ever authorized his attorney to make a usurious contract for the loan in question. Neither by declaration nor act does it appear that the plaintiff was apprised, prior to the service of the answer interposed in this case, that the claim was made that a usurious premium had been charged for the loan; his attorney testifies, as we have seen, that the money was paid in connection with an entirely different and another transaction, and the proof does not show the plaintiff had any other knowledge or information on the subject until the trial of the case. There can be no question, it seems to us, in regard to this aspect of the matter. In view of the fact referred to it is difficult to see upon what ground it can be claimed that the plaintiff had knowledge of the alleged usurious contract testified to by the defendant's witness. The authorities fully sustain the position that, where an agent acts without the authority or knowledge of his principal, the latter is not bound by the usurious contract made by the agent. (*Van Wyck* v. *Watters*, 81 N. Y. 352; *Crane* v. *Hubbel*, 7 Paige, 413.) The evidence also shows that the defendant William Mackellar never contracted to pay the usurious consideration; he took no part in negotiating the loan, and, according to the evidence of his son, it was made mainly for that son's benefit, he having contracted for the alleged usurious premium, and he does not swear, nor does the evidence show, that he was authorized by his father to contract on his behalf to pay more than the legal rate. This is corroborated also by the plaintiff's attorney, who testifies that the defendant's son contracted for himself. It is true there is some evidence to establish the fact that the alleged usury was paid by the defendant's son out of the funds of the mortgagor, but this does not prove usury, as such contract rests upon the basis that there was an agreement of the parties by which their minds met, and the one agreed to receive and the other to take an unlawful premium upon the loan made. There being no such proof it is not manifest how the defense in this action can be sustained. It is ap-

parent that the arrangement found to be usurious was between the defendant's son and the attorney of the plaintiff, without the concurrence of the plaintiff, and hence the mortgage in question was not usurious.

While the question is not entirely free from difficulty we are unable to perceive why the plaintiff, as the case stands, is not entitled to claim that he is not bound by the contract, alleged to have been made with his agent, on the ground that it was unauthorized and without his consent.

It is claimed by the counsel for the respondent that the position that the principal received the $1,200 on another and separate transaction is contrary to the findings and is not entitled to consideration. We do not think that the findings can be regarded as going to the extent claimed for them. They merely cover the question whether there was a usurious contract made and carried out between the plaintiff and the defendant and hold that there was, but inasmuch as it is clearly established that such contract was made without the knowledge or consent of the plaintiff and without his authority it is perfectly legitimate to look at the facts for the purpose of determining whether the money received by the plaintiff was not received upon a different contract and in a different transaction. That question was not directly passed upon by any finding of the court below. If the money had not been received by the plaintiff, as the contract was made by his attorney without his knowledge, authority or consent, the defense of usury clearly could not be maintained. The findings relate simply to the question whether more than the legal rate of interest was paid and the conclusion is based evidently upon that ground. If the plaintiff supposed and understood he received this money on account of another transaction, it cannot we think be said that the findings included and covered such transaction. The fact that the $1,200 came into the hands of the plaintiff does not establish the usury so long as there was no knowledge of the plaintiff at the time of the loan that he was to receive it as a usurious consideration for the same, nor under the circumstances did the payment of the $1,200, three days after the transaction, render the loan invalid.

The acceptance of the check by the plaintiff, of itself, cannot be regarded as a ratification of the alleged agreement made by his attorney. The plaintiff denies that there was any usury and there is no testimony that he had any knowledge of it. It is no answer to such denial that the plaintiff did not give evidence on the trial as to the other transaction. If the evidence of the plaintiff's attorney, as to the fact that the $1,200 was received on account of another transaction, be stricken out and disregarded, there is no proof whatever to establish that it was received as usury. The defendant is bound to make out the defense of usury, and the receipt of this money by the plaintiff, standing alone, without knowledge of any corrupt or usurious agreement, does not prove it was taken in pursuance of an unlawful contract.

After a careful consideration of the case we are satisfied that the trial court was wrong in its conclusion that the contract for the loan, for which the bond and mortgage were executed, was usurious.

As to the $1,200 paid to the plaintiff we think it should be allowed as a payment upon the bond and mortgage. If the money was received, as is claimed, to apply under another arrangement it is not to be assumed that the plaintiff received it as a usurious premium on the loan, and upon receiving information that it was such he should have returned the same to defendant or applied it upon the mortgage. It cannot, we think, be said he had knowledge it was usurious until the judgment of the court to that effect. And it is not too late now to apply the $1,200 upon the mortgage.

It follows, that the judgment should be reversed and a new trial granted, costs to abide the event.

All concur, except RAPALLO and ANDREWS, JJ., dissenting.

Judgment reversed.