DANIEL O'BRIEN, RESPONDENT, v. AUGUSTUS B. FERGUSON, APPELLANT.

*Usury* — 1 *Revised Statutes,* 772, *sec.* 8 — *a grantee taking a conveyance subject to a mortgage is not " the borrower " within the meaning of that act.*

In April, 1873, the plaintiff, being the owner of a farm upon which he desired to borrow money, applied to one Silas A. Ferguson, a brother of the defendant in this action, for a loan of money to be secured by a mortgage upon the farm; the farm was then already incumbered by mortgages and judgments. Acting upon Ferguson's suggestion the plaintiff conveyed the farm to one James P. Foland, who executed a bond and mortgage for $2,700 to the plaintiff, which were subsequently assigned to the defendant for the sum of $2,430, on Silas A. Ferguson paying that amount for the mortgage from money belonging to the defendant, which had been placed in his hands to be loaned. The defendant did not know at the time the loan was made that any bonus was retained by Silas, as the latter charged him with the full amount of the mortgage in his account. In January, 1874, Foland conveyed the premises to the plaintiff's father in consideration of $4,000, subject to the payment by the grantee of the said mortgage, amounting to $2,700 and interest thereon. In 1876 the plaintiff's father conveyed the premises to the plaintiff's wife for the same consideration, subject to the payment by the grantee of the said mortgage. In 1878 the wife conveyed them to one Conway for $500, subject to the payment of the said mortgage, and in 1879 Conway conveyed them to the plaintiff for the consideration of $3,000, by a warranty deed not subject to any condition.

Upon the trial of this action, brought to restrain the defendant from a statutory foreclosure of his mortgage, and to compel him to satisfy and discharge the same on the ground of usury, a judgment was entered declaring the mortgage to be usurious and requiring the defendant to execute a discharge thereof, but not restraining its foreclosure:

*Held,* that the plaintiff was not a borrower within the meaning of section 8 of 1 Revised Statutes, 772, and could not, therefore, obtain a discharge of the mortgage without tendering the money actually received upon the loan. (LANDON, J., dissenting.)

That, as far as appeared, the consideration of the bond and mortgage was the conveyance of the land by the plaintiff to Foland, and they had, therefore, a valid inception when delivered by Foland to the plaintiff, in which case the subsequent assignment of them by the plaintiff for less than their face was not usurious. (Per LEARNED, P. J.)

That if the difference between the face value of the bond and mortgage and the amount paid therefor by the defendant was retained by the defendant's agent, Ferguson, for his compensation, that transaction did not establish the existence of usury as against the defendant. (Per LEARNED, P. J.)

APPEAL from a judgment in favor of the plaintiff, entered upon the trial of this action by the court, without a jury.

. Prior to the trial by the court, certain specific questions had been submitted to and passed upon by a jury.

*Albert Hobbs*, for the appellant.

*Gilbert, Badger & Kilburn*, for the respondent.

LEARNED, P. J.:

This action is brought, first, to restrain a statutory foreclosure of a mortgage, and, second, to compel the satisfaction thereof. The ground of relief is alleged usury. The judgment is that the mortgage is usurious, and that the defendant execute a discharge thereof. There is no injunction restraining the foreclosure.

It might be that any person, owning the land, could bring an action to restrain, on the ground of usury, a statutory foreclosure, without a tender of the money borrowed. But it was a well-settled principle of equity that when an action was brought affirmatively to obtain a discharge of mortgage on the ground of usury, the money actually received must be tendered. This rule of equity has been altered by statute as to the borrower, and only as to him. (1 R. S., 772, § 8.) This plaintiff is not the borrower. He was not personally liable for the loan, and there is no evidence that he has become liable. He, therefore, is not within the privilege given by the statute. (*Buckingham* v. *Corning*, 91 N. Y., 525; *Post* v. *Bank of Utica*, 7 Hill, 391.) Even the actual borrower, who has parted with the incumbered property and then has repurchased it, is no longer the borrower under the statute. And that is the condition of this plaintiff, in the view most favorable to him. (*Schermerhorn* v. *Talman* 14 N. Y., 93; *Wright* v. *Clapp*, 28 Hun, 7.) The

only relief then which the plaintiff should have had, if he had made out a case of usury, was an injunction restraining the statutory foreclosure. He was not entitled to this preventive remedy of a discharge of the mortgage, except on the condition of doing equity. (*Fanning* v. *Dunham*, 5 Johns. Ch., 122.)

The only matter alleged in the complaint as a ground of action was usury in the mortgage. The plaintiff was allowed to show, against defendant's objection, that about the same time he sold certain personal property to one Foland, and took back a chattel mortgage for the price, $1,130, which was done to pay off judgments on the real estate, and that he assigned that chattel mortgage to Ferguson's agent to secure $600, of which said agent gave him $540. This transaction did not show usury in the real estate mortgage. It is not even proved that the sale of this personal property to Foland was fictitious.

The transaction in regard to the mortgage was in substance this: The plaintiff was the owner of a farm, and in April, 1873, applied to one Silas A. Ferguson to borrow money. There were then there three mortgages and some judgments on the farm. The jury have found that, at Ferguson's suggestion, the plaintiff conveyed his farm to James P. Foland, and Foland executed to plaintiff a bond and mortgage for $2,700, and that the plaintiff assigned said bond and mortgage to the defendant for the sum of $2,430. Silas A. Ferguson at the time had money of the defendant in his possession as agent, for the purpose of loaning the same, and used such money in this transaction. There is, however, some inconsistency between the verdict and the findings of the court, for the court finds that Ferguson paid not $2,430, but $2,569.11, by paying off incumbrances on the land, all of the money being applied in that way.

This transaction took place in April, 1873, and in the same month the bond and mortgage were assigned to the defendant. He had no knowledge that the mortgage was bought at a discount until June, 1874. Silas F. Ferguson charged his brother, the defendant, $2,700 for the mortgage, or, as he says elsewhere, he charged the $250 to his brother April, 1873.

In January, 1874, Foland executed a deed to Daniel O'Brien senior, plaintiff's father, of the aforesaid premises for the consideration of $4,000, *subject to the payment by said grantee of said*

*mortgage, amounting to* $2,700 *and interest* thereon, which deed was duly recorded.

Subsequently, in August, 1876, a deed was executed by said Daniel O'Brien, senior, to Hannah O'Brien, plaintiff's wife, conveying said premises for the consideration of $4,000, *subject to payment by said grantee* of said mortgage, amounting to $2,700, and interest thereon, which deed was duly recorded.

Subsequently, in October, 1878, a deed was executed by said Hannah P. O'Brien to Patrick Conway, conveying said premises for the consideration of $500, *subject to the payment by the grantee of said mortgage and interest,* which deed was duly recorded.

Subsequently, January, 1879, a deed was executed by said Conway to plaintiff, conveying said premises for the consideration of $3,000, not subject to any condition, and with warranty, which deed was duly recorded.

Now, if we assume for the present that the mortgage was usurious, it is plain that Foland was the debtor, and that the mortgage was a lien on land of his. He had the right to sell the land, and on. such sale he could charge the duty of paying the mortgage on the grantee; and, if the grantee accepted the deed on the terms of paying the mortgage, the grantee had no right to assert that the mortgage was usurious. The deed from Foland to O'Brien, senior, specifies the amount of the mortgage at $2,700, and interest, and states that the deed is subject to *payment by O'Brien,* senior, of this mortgage. O'Brien therefore could not assert that the mortgage was usurious; because, in consideration of the conveyance, he had agreed to pay this definite sum. And that agreement was valid.

The same may be said of the conveyance to Hannah, and of her conveyance to Conway. Conway, then, who was the owner of the land when the statutory foreclosure was commenced, was bound to pay the mortgage, and the mortgage was a lien on the premises in his hands. O'Brien, the plaintiff, was not then in any way liable as guarantor, or otherwise, on the bond, and he had no interest in the land. He was not the original obligor, and he had assumed no liability. When, therefore, he took a conveyance from Conway he stood in no better position than Conway stood in respect to the premises.

This doctrine may be stated in another way, viz., that usury is a

personal defense, which may be waived by the debtor. If waived by him, it cannot be asserted by others. Foland, the debtor, waived this by his conveyance to O'Brien, senior. It cannot now be asserted by a remote grantee of O'Brien, senior. (*Union Dime Savings Bank* v. *Wilmot*, 94 N. Y., 221, at 228 ; *Shufelt* v. *Shufelt*, 9 Paige, 145 ; *Sands* v. *Church*, 6 N. Y., 347; *Murray* v. *Barney*, 34 Barb., 336.)

But, again, a mortgage executed for a valuable and sufficient consideration is not usurious, notwithstanding a previous agreement. with a third person to purchase it. (*Dunham* v. *Cudlipp*, 94 N. Y., 129 ; *Smith* v. *Cross*, 90 N. Y., 549.) The consideration of this mortgage executed by Foland to plaintiff was the conveyance by plaintiff to Foland of the premises. This was not a mortgage which had no inception until the delivery to Ferguson. If, for instance, plaintiff, without conveying his land, had executed a mortgage to Foland without consideration, in order that Foland might sell it to Ferguson and that plaintiff might receive the avails, then there would have been the case of a mortgage which had no legal inception until delivery to Ferguson, and if Ferguson had paid less than the face the transaction would have been usurious. But that is not this case. Foland received value for his bond and mortgage, and there is no finding and no evidence whatever that he was not to pay his bond. In the language of *Smith* v. *Cross* (*ut supra*), O'Brien actually divested himself of all interest in the real estate, and vested his absolute title in Foland. Furthermore, he has affirmed the validity of the conveyance to him by conveying the premises to O'Brien, senior, and by obtaining an obligation from him to pay the mortgage. It cannot then be said that Foland received no consideration for the mortgage, and that the mortgage was invalid until delivery to Ferguson.

There is still another question. The defendant did not reside in the same place with his agent, and knew nothing of the alleged usury. The agent had the money of the defendant, and retained to his own use the difference between $2,700 and the amount paid on the liens, $2,569.11, about $130. The defendant did not, so far as appears, get any benefit from this. It appears to have been retained by his agent by way of compensation. Indeed, the agent says that he charged his principal $250, which is more than the amount deducted.

The plaintiff's counsel urges that this question should be determined according to the law affirmed by the Court of Appeals at the time the decision was rendered (1880), and says that at the time of the trial of this action the leading case was *Estevez* v. *Purdy* (66 N. Y., 446). That case does not seem to sustain the plaintiff's position here. The doctrine of *Algur* v. *Gardner* (54 N. Y., 360), in the Commission of Appeals, is not sustained in the more recent cases of *Philips* v. *Mackellar* (92 N. Y., 34); *Van Wyck* v. *Waters* (81 id., 352). It cannot be material to the question of usury whether the agent represented to the borrower that the bonus was for the lender's benefit or for his own. The question is, what was the actual truth. If the agent took the bonus for his own benefit and without the knowledge of the principal, then under *Philips* v. *Mackellar* there is no usury. And if there is no usury at the time of the transaction, subsequent acts cannot make that usurious which was not usurious in its inception.

It is true that, about a year after the loan was made, this defendant learned of the alleged usury. But what could he then do? He could not alter the agreement that had been made a year before. (*Miller* v. *Hull*, 4 Denio, 104.) He could not compel the borrower to annul the transaction. To bring an action on the mortgage and to collect interest was not held, in *Philips* v. *Mackellar*, to be such a ratification of the transaction as to make it usurious. And at the end of that opinion it is stated that the principal could not be said to have knowledge that the mortgage was usurious until the decision of the court to that effect.

For these reasons the judgment should be reversed and a new trial granted, costs to abide event.

Bockes, J.:

I concur for reversal on the first point discussed in the foregoing opinion irrespective of other questions urged by the counsel for the appellant. The reasoning of Judges Selden and Denio, in *Schermerhorn* v. *Talman*, has direct application to the facts of this case, as I think, and must be held to be conclusive of it. The plaintiff was not bound by the original contract to pay the loan (*Wright* v. *Clapp*, 28 Hun, 7), nor was he surety or guarantor of this debt, and, as appears, he was merely guarantor of the equity of redemption.

(See, also, *Buckingham* v. *Corning*, 91 N. Y., 525, cited in opinion.)

LANDON, J. (dissenting):

Silas B. Ferguson in making this loan acted as the agent for his brother, and exacted a bonus or allowance of ten per cent as the condition of the loan. The mortgage was given for $2,700 and only $2,430 of the defendant's money was ever paid to the plaintiff thereon. It is true that the defendant knew nothing of the transaction at the time it took place; that his agent kept the $270 for himself, and sent the mortgage by mail to the defendant who then resided in Otsego county and charged him $2,700 therefor. This was in 1873. A year later, however, the defendant learned that the mortgage, as he expresses it in his testimony, " was bought at a discount. " He then learned or would have learned if he had prosecuted the inquiry, that he was holding a mortgage for $2,700 upon which only $2,430 of his money had been loaned, and that his agent had exacted $270 usury thereon. It was then open to him either to ratify the act of his agent or to repudiate it. He chose to ratify it by receiving interest for several years upon the whole sum and finally by seeking to foreclose for the whole sum. To restrain such foreclosure this action is brought. We think the judgment should be affirmed. The defendant cannot with full knowledge of all the facts appropriate to himself the fruits of his agents action, without ratifying the instrumentalities by which it was accomplished. No case is presented showing that the agent made any separate bargain for a bonus for the benefit of himself The transaction was an express exaction of ten per cent, ostensibly for the benefit of the lender, without pretense that it was for the benefit of the agent, a transaction which the principal in no way has repudiated. In this respect the case differs from *Philips* v. *Mackellar* (92 N. Y., 34); *Estevez* v. *Purdy* (66 id., 446); *Van Wyck* v. *Waters* (81 ib., 352), and other similar cases in which the lender advanced the entire sum for which the security was given, and the agent in some way appropriated part of it to himself. Here the lender did not advance the face of the mortgage. His agent had his funds and could advance for him as much or as little as his thrift in extortion required, and the result in this case was

the principal obtained a $2,700 bond and mortgage for $2,430, and he allowed his agent to charge him $250 for his services; thus the, principal took all of the usury, and allowed his agent liberal wages, , not out of it, but because of it. The case seems to be much stronger than *Algur* v. *Gardner* (54 N. Y., 360).

It is objected that the plaintiff is not a " borrower " within the terms of the statute which allows the borrower to maintain an action to have an usurious security canceled without refunding the amount actually advanced thereon. (1 R. S., 772, § 8; 4 Edm. Stat., 460, § 4.) If we regard simply the form of the transaction, the plaintiff was not the borrower, but if we regard the substance, he was. The courts, in their construction of the word " borrower," have held that the man who did not borrow the money did not come within the meaning of the word " borrower."

In *Vilas* v. *Jones* (1 N. Y., 280), BRONSON, J., says : " There is no solid ground for saying that the word ' borrower ' includes one who did not borrow," and that view has since prevailed. Conversely, the man who did borrow is included. It seems plain in this case that the plaintiff was the real borrower, and that the fact should be so found. (*Tiedemann* v. *Ackerman*, 16 Hun, 307; S. C., 84 N. Y., 677.)

At the end of a line of fictions the real estate is again vested in him, clouded with this usurious mortgage. The courts have not been inclined to permit any one succeeding to the title of the borrower to come into equity for relief without tendering the amount actually due for the reason that he had a defense at law if sued. This reason is expressly stated in *Buckingham* v. *Corning* (91 N. Y., 528) and *Allerton* v. *Belden* (49 N. Y., 373). The statute allowing a borrower to ask relief against the usurious contract without tendering the amount due upon it, was among other things intended to protect a mortgagor against a statutory foreclosure. (*Livingston* v. *Harris*, 11 Wend., 329.) In such a proceeding he has no remedy at law, and he must come into equity or else lose his land upon an usurious mortgage.

But even if this plaintiff should be held not to be a " borrower," the case of *Schermerhorn* v. *Talman* (14 N. Y., 93), authorizes the court in this action to grant to the plaintiff relief against this mortgage. This case, like the one cited, was tried upon the merits upon

the issues framed by the complaint and answer.   In that case the court held that the plaintiff was not a "borrower," but nevertheless awarded him the relief to which he was entitled.   Here, we find that the plaintiff is entitled to relief against the entire mortgage, since he must have that relief here, or forever lose it.

The judgment should be affirmed, with costs.

Judgment reversed, new trial granted, costs to abide event.